IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:10cr186-MHT |
| MILTON E. McGREGOR, | ) | (WO) |
| THOMAS E. COKER, | ) | |
| LARRY P. MEANS, | ) | |
| JAMES E. PREUITT, | ) | |
| HARRI ANNE H. SMITH, | ) | |
| JARRELL W. WALKER, JR., | ) | |
| and JOSEPH R. CROSBY | ) | |

## OPINION AND ORDER

Following a mistrial, defendants Milton E. McGregor, Thomas E. Coker, Larry P. Means, James E. Preuitt, Harri Anne H. Smith, and Jarrell W. Walker, Jr. move to dismiss the indictment and for judgments of acquittal on double-jeopardy grounds. Relying on principles of issue preclusion embodied in the Double Jeopardy Clause, the defendants argue that the jury decided certain facts in their favor when it found them not-guilty on various counts and hung on the remaining counts. The defendants contend that the acquittals collaterally estop the government from prosecuting them a second time on the

hung counts.  For the reasons that follow, the court denies the motions insofar as they raise double-jeopardy claims.

## I. Standard for Double Jeopardy

At its common-law core, the Double Jeopardy Clause prohibits the government from charging a defendant with the same crime twice.  But a retrial after a hung jury is distinct from a second trial after a total acquittal.  The former is the continuation of the same criminal proceeding, whereas the latter is the paradigmatic evil the Double Jeopardy Clause targets.  Thus, it is well settled that a "retrial following a 'hung jury' does not violate the Double Jeopardy Clause."  <u>Richardson v. United States</u>, 468 U.S. 317, 324 (1984).

But the Double Jeopardy Clause would be rendered a nullity if creative pleading permitted the government to re-indict acquitted defendants on new charges based on the same factual scenario.  The Double Jeopardy Clause,

therefore, incorporates principles of collateral estoppel. See Ashe v. Swenson, 397 U.S. 436 (1970). As in civil litigation, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Id. at 443. If a jury "necessarily decided" a fact when it rendered a not-guilty verdict, issue preclusion prevents its re-litigation. Yeager v. United States, 129 S. Ct. 2360, 2367 (2009).

In deciding whether collateral estoppel bars a retrial, courts must engage in a two-step inquiry. First, courts must examine whether it is possible to "ascertain the basis of the acquittal at the first trial." United States v. Quintero, 165 F.3d 831, 835 (11th Cir. 1999) (internal quotation marks omitted). Second, courts should "determine whether the facts found at the first trial are an essential element of conviction of the second offense." United States v. Ohayon, 483

3

F.3d 1281, 1294 (11th Cir. 2007). If a fact that was necessarily decided in the defendants favor is required for a conviction under another count, a retrial is prohibited. See United States v. Bennett, 836 F.2d 1314, 1316 (11th Cir. 1988) ("To bar prosecution, a finding of fact must be inconsistent with a finding of guilt in a second trial."). Defendants bear the burden of establishing their double-jeopardy claim. See Ohayon, 483 F.3d at 1286.

Where, as here, the jury issues a general verdict, courts should "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." Ashe, 397 U.S. at 444 (internal quotation marks omitted). Courts should approach this task with "realism and rationality" and eschew the "hypertechnical and archaic approach of a 19th century

pleading book." Id. Nonetheless, the "doctrine of collateral estoppel is a narrow exception to the Government's right to prosecute a defendant in separate trials for related conduct." United States v. Brown, 983 F.2d 201, 202 (11th Cir. 1993).

In conducting this inquiry, courts may look to only the acquitted counts. Because there is "no way to decipher what a hung count represents," the court cannot examine the unresolved counts to determine what facts the jury necessarily decided. Yeager, 129 S. Ct. at 2368. A hung count, therefore, is a "nonevent." Id. at 2367.

Additionally, the "possibility of jury nullification ... cannot enter into the analysis of courts making collateral estoppel inquiries." Brown, 983 F.2d at 203.

## II. Verdicts at the First Trial

This public-corruption case involves allegations of federal-programs bribery, extortion, honest-services mail

and wire fraud, money laundering, making a false statement, obstruction of justice, and conspiracy to commit federal-programs bribery. In August 2011, a jury returned 91 not-guilty verdicts and 33 unresolved counts. The government has elected to retry the remaining defendants on all counts.

As the chart below demonstrates, the jury found the defendants not guilty on the vast majority of the honest-services counts.[1] Only McGregor, Coker, and Smith have honest-services charges still pending against them. The jury also found the defendants not guilty of all the extortion charges.

---

1. This chart omits defendants Robert B. Geddie, Jr. and Quinton T. Ross, Jr., who were acquitted entirely. A filled-in box indicates that the defendant was either not charged with that offense or the court acquitted the defendant on that charge prior to the case going back to the jury.

| Count | Crime | McGregor | Coker | Means | Preuitt | Smith | Walker | Crosby |
|---|---|---|---|---|---|---|---|---|
| 1 | Conspiracy | Hung | Hung | Hung | Hung | Hung | Hung | |
| 2 | Bribery | | | | | Not Guilty | | |
| 4 | Bribery | Hung | | | | | | |
| 5 | Bribery | Hung | | | | | | |
| 6 | Bribery | | | Hung | | | | |
| 7 | Bribery | | | Not Guilty | | | | |
| 8 | Bribery | Hung | Hung | | | | Hung | |
| 9 | Bribery | | | | Hung | | | |
| 10 | Bribery | Not Guilty | Not Guilty | | | | | |
| 14 | Bribery | | | | | Hung | | |
| 15 | Bribery | Hung | | | | | | |
| 16 | Bribery | | | | | | | Hung |
| 19 | Extortion | | | Not Guilty | | | | |
| 20 | Extortion | | | Not Guilty | | | | |
| 21 | Extortion | | | | | Not Guilty | | |
| 22 | Extortion | | | | Not Guilty | | | |
| 23 | Honest Services | Hung | Not Guilty | Not Guilty | Not Guilty | Not Guilty | Not Guilty | |
| 24 | Honest Services | Hung | Not Guilty | Not Guilty | Not Guilty | Not Guilty | Not Guilty | |
| 25 | Honest Services | Hung | Not Guilty | Not Guilty | Not Guilty | Not Guilty | Not Guilty | |
| 26 | Honest Services | Hung | Not Guilty | Not Guilty | Not Guilty | Hung | Not Guilty | |
| 27 | Honest Services | Hung | Not Guilty | Not Guilty | Not Guilty | Not Guilty | Not Guilty | |
| 28 | Honest Services | Hung | Not Guilty | Not Guilty | Not Guilty | Not Guilty | Not Guilty | |
| 29 | Honest Services | Not Guilty | Not Guilty | Not Guilty | Not Guilty | Not Guilty | Not Guilty | |
| 30 | Honest Services | Hung | Not Guilty | Not Guilty | Not Guilty | Not Guilty | Not Guilty | |
| 31 | Honest Services | Hung | Hung | Not Guilty | Not Guilty | Not Guilty | Not Guilty | |
| 32 | Honest Services | Hung | Not Guilty | Not Guilty | Not Guilty | Not Guilty | Not Guilty | |
| 33 | Honest Services | Not Guilty | Not Guilty | Not Guilty | Not Guilty | Hung | Not Guilty | |
| 34 | Money Laundering | | | | | Hung | | |
| 35 | Money Laundering | | | | | Hung | | |
| 36 | Money Laundering | | | | | Hung | | |
| 37 | Money Laundering | | | | | Hung | | |
| 38 | False Statement | | | | Hung | | | |

III. Discussion

The defendants make a series of arguments regarding issue preclusion. McGregor, Coker, and Smith contend that their acquittals on some of the honest-services counts requires, at a minimum, that the remaining honest-services counts be dismissed. Similarly, Smith asserts that the not-guilty verdict on the extortion count precludes a retrial on the bribery charge. And, more broadly, the six defendants argue that their acquittals on the honest-services counts necessitates dismissal of all remaining charges.[2]

Because defendants have not met their burden to establish what the jury "necessarily decided," their collateral-estoppel challenge must fail.

According to the defendants, the acquittals on the honest-services mail and wire fraud counts reveal that

---

2. The court notes that defendant Joseph R. Crosby has not explicitly raised an issue-preclusion argument. Only one charge against Crosby went to the jury, which hung on that count. The jury, therefore, did not "necessarily decide" any fact as to Crosby.

the jury necessarily decided that there was no bribery scheme. The defendants, however, ignore that honest-services mail and wire fraud requires multiple findings. As the court instructed the jury, the government must prove all the following facts beyond a reasonable doubt:

> "First: the defendant knowingly devised or participated in a scheme to defraud the public of its right to the honest services of a public official through bribery, using false or fraudulent pretenses, representations, or promises;
>
> "Second: the false or fraudulent pretenses, representations, or promises were about a material fact;
>
> "Third: the defendant did so with an intent to defraud;
>
> "Fourth: the defendant did either of the following: (1) used the United States Postal Service by mailing or causing to be mailed, or used a private or commercial interstate carrier by depositing or causing to be deposited with such carrier, something meant to help carry out the scheme to defraud through bribery; or (2) transmitted or caused to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud through bribery; and

> "*Fifth*: there was a quid pro quo in the scheme to defraud through bribery."

Jury Instructions, Doc. No. 1640, at 31-32.

As the defendants correctly point out, all the honest-services mail-fraud and wire-fraud counts allege a scheme to defraud through bribery. But each count is predicated on a particular phone call or mailing.

While explaining that each call or mailing was a distinct offense, the court instructed the jury that:

> "To 'cause' the mail or an interstate carrier to be used, or to "cause" a wire communication to be transmitted is to do an act knowing that the use of the mail or an interstate carrier, or a wire transmission will follow in the ordinary course of business, or where that use or transmission is reasonably foreseeable. . . .
>
> "The item sent or transmitted may be anything, but it must further or assist in the carrying out of the scheme to defraud. There is no requirement that the mailing or use of an interstate carrier, or wire transmission precede the fraud, so long as it was in furtherance of the success of the scheme."

*Id*. at 35-37.

The jury could have rationally concluded that the acquitted calls and mailings were not in furtherance of the scheme or that they were not caused by or reasonably foreseeable to a defendant. These individualized decisions on particular calls and mailings cut against the defendants' contention that the jury made a broader decision regarding the underlying bribery scheme. Indeed, the defendants' arguments appear to engage in what <u>Yeager</u> prohibits: an attempt to rationalize the not-guilty and hung verdicts. The court may not juxtapose the acquitted and hung counts in an attempt to ascertain the jury's reasoning. Because it is impossible to discern a precise factual finding that goes beyond the specific call or mailing in question, the honest-services acquittals do not bar a retrial on either the hung honest-services charges or the other offenses.

McGregor and Coker rely on <u>United States v. Coughlin</u>, 610 F.3d 89 (D.C. Cir. 2010), where the defendant was charged with devising a scheme to defraud the September

11

11th Victim Compensation Fund by filing exaggerated claims about his injuries. Coughlin was indicted on five counts of mail fraud (one for each mailing to the compensation fund), one count of making a false claim, and one count of theft of public money. Id. at 94-95.[3] The jury acquitted on three mail fraud counts and hung on the remaining counts. Id. at 95. The not-guilty and hung mailings were sent at various times during the alleged scheme, with the last acquitted mailing occurring at its conclusion. Id. at 99.

The appellate court rejected the government's contention that the jury decided that the acquitted mailings were not made in furtherance the scheme: each mailing was an administrative filing that Coughlin had prepared and sent to the compensation fund. Id. at 99. The court reasoned that, if there had been a scheme to defraud, there was no question that Coughlin partook in

---

3. Coughlin's wife was a co-defendant at trial. She was acquitted of the sole count against her: theft of public money. Coughlin, 610 F.3d at 95 n.1.

it and that the mailings furthered the scheme. This point went undisputed. See id. (discussing the prosecutor's statements at trial about the in furtherance prong not being a "big issue").

The Coughlin court, therefore, found that the "defense at trial was that he lacked fraudulent intent because he had always acted in good faith." Id. at 98. The court then held that, because the jury necessarily decided that Coughlin "lacked fraudulent intent when he mailed each of the three letters," id., the two unresolved mail-fraud counts were precluded under the Double Jeopardy Clause. Id. at 93.

This case, by contrast, involves a multi-defendant scheme with five honest-services mail-fraud counts and six honest-services wire-fraud counts. The issue in dispute went beyond whether the defendants possessed the requisite intent. Unlike Coughlin, where the in furtherance prong was undisputed at trial, it was disputed here. See, e.g., Closing Argument Transcript,

Doc. No. 1833, at 264 (Coker's attorney arguing that J-137, the tape subject to count 30, was an example that "show[s] how honest people lobby"). A consistent defense theme of the first trial was that "Team Gilley" had gone rogue and that McGregor's allies were merely lobbying. This was such a pervasive theme that the prosecution addressed it at the beginning of its closing argument. Id. at 63 ("There wasn't a separate Team Gilley and a separate Team McGregor."). The jury, for example, could have found that a call between Smith and Ronnie Gilley (count 33) was not reasonably foreseeable to the other defendants.

Instead of filings being prepared by one person and sent to a single administrative entity, the scheme here involved calls and mailings between four of the remaining defendants, one defendant who pled guilty and three others. Rather than a simple scheme to defraud money from one government entity, the indictment alleges a scheme to defraud through bribery of several state

14

lawmakers.  Given the wide-ranging nature of this scheme and the substantive telephone recordings that were available to the jury, it is quite possible that the jury found that a particular call or mailing was not in furtherance of the alleged scheme or reasonably foreseeable to a particular defendant.

As to the other defendants, Means, Preuitt, and Walker were acquitted of all honest-services mail-fraud and wire-fraud counts.  In addition to the reasons given above, the jury could have also found that these defendants lacked the requisite means rea: an intent to defraud.[4]  Thus, the government is not re-litigating a necessarily decided fact when it charges these three defendants with bribery and conspiracy.

Similarly, Means's, Preuitt's, and Smith's acquittals on the extortion counts does not bar prosecution on the bribery and conspiracy counts.  The court instructed the

---

4.  The court notes that this heightened element is lacking in both the conspiracy and federal-programs-bribery charges.

15

jury that under the Hobbs Act, it had to find the following facts beyond a reasonable doubt:

> "<u>First</u>: the defendant caused or attempted to cause the person named in the corresponding count to part with property;
>
> "<u>Second</u>: the defendant did so knowingly by using extortion under color of official right, as I will define it;
>
> "<u>Third</u>: the extortionate transaction delayed, interrupted, or affected interstate commerce, or in the case of attempted extortion, the transaction would have delayed, interrupted, or affected interstate commerce if completed; and
>
> "<u>Fourth</u>: there was a quid pro quo."

Jury Instructions, Doc. No. 1640, at 29.

The court elaborated on these elements as follows:

> "'Extortion under color of official right' is the wrongful taking or receipt of money or property by a public officer who knows that the money or property was taken or received in return for doing or not doing official acts. It does not matter whether or not the public officer employed force, threats, or fear.

> "'Wrongful' means to get property unfairly and unjustly because the person has no lawful claim to it."

Id.

The defendants read the extortion acquittals charitably, assuming the jury found that no quid pro quo existed. But this is not the only route to a not-guilty verdict.

The jury could have rationally found that the state senators did not wrongfully take or receive money or property knowing that the money or property was taken or received in return for doing or not doing official acts. But even this finding is predicated on multiple factual predicates. The jury may have concluded that the defendants did not "wrongfully" receive campaign contributions, as that term was defined in the jury instructions. Additionally, the jury could have found that state lawmakers did not <u>knowingly</u> extort the named person or persons in the indictment. It is far from

17

clear which fact or facts the jury rested its extortion acquittals on.

Given the sheer complexity of these charges and the multi-pronged defense arguments, it is impossible to distill from the jury's verdict what it necessarily decided when it acquitted the defendants on the majority of counts. Over the course of a lengthy first trial, the defendants vigorously attacked the credibility of several witnesses, questioned the government's proof regarding quid pro quo corruption, claimed that no illicit intent existed as to any of the charges, and argued that no bribery occurred at all. No stone was left unturned.

While this may make for good defense strategy, it creates a quandary for issue-preclusion analysis. Collateral estoppel is a narrow exception, and the defense bears a high burden in establishing its existence. See Brown, 983 F.2d at 202. Indeed, findings of issue preclusion in criminal cases tend to occur when there is only one disputed fact. See Ashe,

397 U.S. at 445 ("The single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers."); Coughlin, 610 F.3d at 98 ("Coughlin's defense at trial was that he lacked fraudulent intent because he had always acted in good faith."); Ohayon, 483 F.3d at 1287 ("The lone dispute at trial was whether Ohayon was aware of the contents of the bags.").

Here, the defendants have failed to satisfy their burden at the first stage of the issue-preclusion inquiry. The defendants have not shown a factual dispute that was <u>necessarily</u> decided by the jury's not-guilty verdicts.

\* \* \*

Accordingly, it ORDERED that the motions to dismiss and for a judgment of acquittal (Doc. Nos. 1748, 1749, 1751, 1753, 1754, 1756, 1757, 1805, 1806 & 1869) filed by defendants Milton E. McGregor, Thomas E. Coker, Larry P.

19

Means, James E. Preuitt, Harri Anne H. Smith, and Jarrell W. Walker, Jr. are denied to the extent they assert issue-preclusion grounds.

Pursuant to United States v. Dunbar, 611 F.2d 985 (5th Cir. 1980),[5] the court is required to make "written findings determining whether the motion is frivolous or nonfrivolous. If the claim is found to be frivolous, the filing of a notice of appeal by the defendant shall not divest the district court of jurisdiction over the case. If nonfrivolous, of course, the trial cannot proceed until a determination is made of the merits of an appeal." Id. at 988. The court finds that the defendants' double-jeopardy claims are frivolous.

DONE, this the 28th day of October, 2011.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

---

5. In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.