IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>MILTON E. McGREGOR, )<br>THOMAS E. COKER, )<br>LARRY P. MEANS, )<br>JAMES E. PREUITT, )<br>HARRI ANNE H. SMITH, and )<br>JARRELL W. WALKER, JR. ) | CRIMINAL ACTION NO.<br>2:10cr186-MHT<br>(WO) |

OPINION

In the retrial of this public-corruption case, the government sought the admission of certain out-of-court statements made by the late defendant Joseph R. Crosby.* Defendant Milton E. McGregor objected to their admission on Confrontation Clause grounds. The court overruled McGregor's objection and admitted the evidence. This opinion explains why.

---

* Given the numerous opinions already issued in this case, the court assumes a certain familiarity with the facts. For a thorough discussion of this litigation, including the need for a retrial, see United States v. McGregor, ___ F. Supp. 2d ___, 2011 WL 5025835 (M.D. Ala. Oct. 20, 2011).

I.

This retrial of McGregor and five other defendants concerns allegations of bribery at the highest levels of Alabama government. Specifically, the defendants allegedly offered and accepted bribes to pass Senate Bill 380 (SB380), which would have authorized a constitutional referendum to legalize electronic bingo. Amongst other counts, McGregor was charged with bribing Crosby with $3,000 monthly payments in 2009 and 2010. At the time, Crosby served as a legislative analyst with Alabama's Legislative Reference Service (LRS) and was responsible for drafting SB380.

The government moved to admit "Statements of Economic Interests" that Crosby filed while employed at LRS. These documents are mandatory filings for Alabama employees who earn more than a threshold income. The purpose of the forms is to encourage transparency in government and reveal potential conflicts of interest.

The forms require employees to list their income, their spouse's income, real estate holdings, stock investments, and consulting services. Each statement concludes with a "DECLARATION OF REPORTING PERSON," which provides:

> "I have read and completed the Statement of Economic Interests. Form ASEC-1 (Revised), and do swear (or affirm) that the information contained in said Statement of Economic Interests is true and correct. I fully understand that anyone who violates the disclosure provision of this Act shall be subject to a fine of $ 10.00 a day not to exceed $ 1,000 annually. I also understand that any attachments that I place with this form become a part of this public record."

Ex. 1192B, at 5.

On the day before the scheduled start of this retrial, defendant Crosby died of natural causes. Crosby had been charged with accepting bribes from McGregor, and Crosby's Statements of Economic Interests were admitted at the first trial to establish his consciousness of guilt. But with Crosby no longer a defendant, McGregor moved to exclude the statements based on the

3

Confrontation Clause. According to McGregor, the declaratory signatures at the conclusion of the statements transformed these filings into testimonial hearsay.

II.

The Confrontation Clause prohibits the use of testimonial hearsay without giving the defendant an opportunity to cross-examine the witness. But when a statement is not hearsay because it is not admitted for the truth of the matter asserted, the Confrontation Clause is not implicated. In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court explained that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Id. at 59 n.9. This limitation mirrors Federal Rule of Evidence 801(c), which defines hearsay as out-of-court statements offered "in evidence

to prove the truth of the matter asserted in the statement"

Courts have frequently recognized that the Confrontation Clause permits statements that are not admitted for the truth of the matter asserted. In Tennessee v. Street, 471 U.S. 409 (1985), the Supreme Court held that an accomplice's confession was admissible to rebut the defendant's testimony that his confession was coerced. Id. at 414. The defendant in Street was charged with participating in a robbery that quickly transformed into a brutal murder. At trial, the prosecutor relied on a confession that the defendant had made to a sheriff. The defendant testified that his confession was coercively derived from an accomplice's written confession, claiming that the sheriff read from the accomplice's confession and directed the defendant to say the same thing. In rebuttal, the prosecutor called the sheriff, who denied that the defendant was read the accomplice's confession and who read that

confession to the jury after the trial judge had instructed the jury that the confession was not admitted for the purpose of proving its truthfulness but for the purpose of rebuttal only.  The prosecutor then elicited from the sheriff testimony emphasizing the differences between the defendant's confession and the accomplice's confession.  The Supreme Court reasoned that, "The nonhearsay aspect of [the accomplice]'s confession--not to prove what happened at the murder scene but to prove what happened when [the defendant] confessed--raises no Confrontation Clause concerns." Id.

This Rule 801(c) limitation has been endorsed by the Eleventh Circuit Court of Appeals in post-Crawford decisions.  In United States v. Jiminez, 564 F.3d 1280 (11th Cir. 2009), two brothers were found inside a house during a drug raid.  One of the brothers, Jesus, initially denied knowing about 210 marijuana plants discovered in part of the house.  The police next spoke with Jisklif, who confirmed that Jesus assisted him in

6

preparing drugs. The police then went back to ask Jesus more questions about the drugs; during this second questioning, Jesus confessed to his involvement in growing marijuana. Id. at 1283-84. The trial court admitted Jisklif's statement to show why the police questioned Jesus a second time, not for the truth of the matter asserted. The Eleventh Circuit held that when an out-of-court statement is admitted "for a purpose other than for the truth of the matter asserted, the admissibility of that statement does not violate the Confrontation Clause." Id. at 1287 (emphasis in original).

Indeed, "[t]here can be no doubt that the Confrontation Clause prohibits only statements that constitute impermissible hearsay." Id. at 1286 (emphasis in original). See also United States v. Augustin, 661 F.3d 1105, 1128-29 (11th Cir. 2011) (adopting similar rationale); United States v. O'Sullivan, 361 F. App'x 993, 997-98 (11th Cir. 2010) (same). Other federal

7

courts of appeals have also adopted the Rule 801(c) limitation. See, e.g., United States v. Faulkner, 439 F.3d 1221, 1226 (10th Cir. 2006) ("One thing that is clear from Crawford is that the [Confrontation] Clause has no role unless the challenged out-of-court statement is offered for the truth of the matter asserted in the statement."); United States v. Stewart, 433 F.3d 273, 291 (2d Cir. 2006) ("Crawford expressly confirmed that the categorical exclusion of out-of-court statements that were not subject to contemporaneous cross-examination does not extend to evidence offered for purposes other than to establish the truth of the matter asserted.").

The question, then, is whether the Statements of Economic Interests are hearsay as defined by Rule 801(c).

### III.

The government contended that the Statements of Economic Interests were not hearsay because they were not being admitted for the truth of the matter asserted. The

government introduced the statements to establish the following chronology:

- On April 21, 2009, Crosby's filed a Statement of Economic Interests for calendar year 2008 and did not list any income received from McGregor or his companies. Gov't Ex. 1272A.

- Shortly after passage of SB380 in March 2010, the government's corruption investigation became public.

- On April 20, 2010, Crosby filed his Statement of Economic Interests for calendar year 2009 and did not list any income from McGregor or his companies. Gov't Ex. 1272B.

- In August 2010, Crosby filed addenda to his 2008 and 2009 Statements of Economic Interests. These addenda stated that Crosby received between $ 10,000 and $ 50,000 in "miscellaneous passive income" from "M.C.G.P., Inc." in both calendar year 2008 and 2009. Gov't Ex. 1272C.

- In October 2010, the indictment was issued.

- On April 11, 2011, Crosby filed a Statement of Economic Interests for the 2010 calendar year, which listed "MCGP" as a source of more than $ 5,000 in consulting income. Gov't Ex. 1272D.

The court concluded that the Statements of Economic Interests were admissible to rebut McGregor's contention that the $ 3,000 monthly payments were for Crosby's work as a consultant for Macon County Greyhound Park. This

9

argument had been a consistent and major theme of McGregor's defense. For example, McGregor's counsel asserted in opening statements that Crosby was paid as a consultant. Feb. 9, 2012, Trial Transcript (Doc. No. 2313) at 1-108 to 1-109. And during cross-examination of an LRS employee, McGregor's counsel strongly implied that the payments were for consulting work. Feb. 10, 2012, Trial Transcript (Doc. No. 2317) at 2-180.

The timeline of Crosby's Statements of Economic Interests served as rebuttal evidence for at least five reasons. First, Crosby's initial failure to report any income from McGregor or his companies cut against the argument that there was a legitimate-employment relationship. Second, the timing of the addenda rebutted McGregor's "consulting services" argument because Crosby reported the income only after the corruption investigation became public. Third, Crosby listed the income as coming from "MCGP," an obscure acronym for McGregor's Macon County Greyhound Park. Fourth, Crosby

changed how he classified his income from McGregor. In the 2008 and 2009 addenda, Crosby described the monthly payments as "miscellaneous passive income." By contrast, the 2010 statement listed the income as consulting work. Finally, Crosby's classification of the monthly payments as "consulting" work was done only after his indictment.

To sum up, the statements provided rebuttal evidence by juxtaposing the filings with Crosby's knowledge of the corruption investigation. Even absent a comparison to the investigation, the statements were contradictory with each other. Viewed from this perspective, the government did not admit the statements for their truth, but rather to highlight their incompatibility with McGregor's version of events. The statements were admitted to establish that the payments were <u>not</u> consulting income, but the statements did not, and were not submitted to, resolve what the payments actually were: the 2008 and 2009 statements did not show what the payments were; no contended that the payments were passive income as

11

reflected in the 2008 and 2009 addenda; and the government did not argue that the payments were consulting fees, though they were reflected as such in the 2010 statement. As in Tennessee v. Street, this evidence is admissible to rebut an argument made by the defendant.

Moreover, in Street, Justice Brennan, joined by Justice Marshall, noted with emphasis in his concurrence the following: "With respect to the State's need to admit the confession for rebuttal purposes, it is important to note that [the defendant] created the need to admit the statement by pressing the defense that his confession was a coerced imitation of [the accomplice]'s out-of-court confession. Also, the record contains no suggestion that the State was engaged in any improper effort to place prejudicial hearsay evidence before the jury. Under the circumstances of the present case, admission of the out-of-court confession for nonhearsay rebuttal purposes raises no Confrontation Clause problems." Street, 471

U.S. at 417-18 (Brennan, J., concurring) (internal citation omitted). Similarly here, when McGregor put forward, as a major part of his defense, the contention that the monthly statements to Crosby were consulting fees (rather than bribes), the focus turned to whether the government could rebut this contention. Had the government been denied the opportunity to introduce the Statements of Economic Interests in rebuttal, the jury would have been impeded in its effort to determine whether McGregor's contention was true. The government did not engage in any improper effort to place before the jury the Statements of Economic Interests.

To be sure, unlike in Street, this court did not give an instruction limiting the statements' introduction for rebuttal purposes. However, here all defendants declined such an instruction. Therefore, while not waiving their Confrontation Clause objections, the defendants did not want a limitation on the statements' use once the court had decided they were admissible.

* * *

Accordingly, for the above reasons, the court admitted the Statements of Economic Interests over defendant Milton E. McGregor's objection on a Confrontation Clause ground.

DONE, this the 8th day of March, 2012.

                               /s/ Myron H. Thompson
                              UNITED STATES DISTRICT JUDGE